IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JEFFREY BARON; QUANTEC, LLC;** | § | |
| **AND NOVOPOINT, LLC,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. **3:15-CV-232-L** |
| **PETER VOGEL AND GARDERE** | § | |
| **WYNNE SEWELL LLP,** | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiffs' Expedited Motion to Remand (Doc. 13), filed February 9, 2015.

After considering the motion, response, reply, pleadings, Notice of Removal, and applicable law, the

court **denies** Plaintiffs' Expedited Motion to Remand (Doc. 13).

**I.      Factual and Procedural Background**

Plaintiffs Jeffrey Baron ("Baron"); Quantec, LLC; and Novopoint, LLC ("LLCs")

(collectively, "Plaintiffs") originally brought this action on November 24, 2014, in the 134th Judicial

District Court, Dallas County, Texas, against Defendants Peter Vogel; Gardere Wynne Sewell, LLP;

Daniel Sherman; and Munsch, Hardt, Kopf, & Harr, P.C., alleging claims based on theories of

wrongful appointment of receivership, breach of fiduciary duty, civil conspiracy, intentional

infliction of emotional distress, gross negligence and intentional torts, abuse of process, breach of

contract, constitutional torts, and vicarious liability.  Daniel Sherman and Munsch, Hardt, Kopf, &

Harr, P.C. are no longer parties to the action.  All of Plaintiffs' claims arise out of Peter Vogel's

("Vogel") duties as a court-appointed receiver over Plaintiffs' assets and Gardere Wynne Sewell,

LLP's ("Gardere") (collectively, "Defendants") conduct in acting as counsel to the receiver in the

*Netsphere* litigation, Civil Action No. 3:09-CV-988-L, which was assigned to this court on June 3, 2013.

The receivership was established in 2009, by then- Senior United States District Judge Royal Furgeson ("Judge Furgeson"), in an attempt to curb "Baron's longstanding vexatious litigation tactics" that had disrupted the underlying proceedings in the *Netsphere* litigation. *Netsphere, Inc. v. Baron*, 703 F.3d 296, 311 (5th Cir. 2012) (*Netsphere I*). Numerous appeals related to the receivership were filed. In a December 18, 2012 opinion, the Fifth Circuit reasoned that, if the district court had entered a sufficiently specific order, it would have been more appropriate for the district court to "have held Baron in contempt, imposed a fine or imprisoned him for 'disobedience . . . to its lawful . . . command'" pursuant to 18 U.S.C. § 401. *Id.* As no such order was ever entered, the question in *Netsphere I* was whether the receivership was the appropriate mechanism for addressing "Baron's longstanding vexatious litigation tactics." *Id.* The Fifth Circuit determined that a district court has "undeniable authority to control its docket but not through creating a receivership over assets, including personal assets, that were not the subject of the litigation." *Id.* The *Netsphere I* court, therefore, reversed the receivership order, and remanded the case to the district court with instructions to expeditiously wind down the receivership, discharge the receiver, his attorneys and employees, and pay any remaining receivership fees in accordance with the court's opinion. *Id.* at 313-14. The court in *Netsphere I* reasoned that, while the receivership was improper, allowing reasonable receivership expenses to be paid from the receivership funds was equitable because Baron's own conduct increased to a large extent the work and fees incurred by the receiver and his attorneys. *Id.* at 313.

The winding down of the receivership was initially delayed as a result of an involuntary bankruptcy proceeding brought against Baron by his lawyers on December 18, 2012. After the

involuntary bankruptcy was dismissed by agreement and this court announced in early 2014 that it would begin winding down the receivership in accordance with the Fifth Circuit's mandate in *Netsphere I*, a dispute and power struggle arose between Baron and the LLCs and persons acting on their behalf as to whom had authority to receive the LLCs' assets and manage the companies after the receivership was terminated.  The LLCs contended that their assets should be turned over to Lisa Katz ("Katz"), the LLCs' manager who was hired in 2011 by the former trustee of the Village Trust. Baron and those acting on his behalf contended that the LLCs' assets should be turned over to a yet-to-be determined designee of the Village Trust trustee.  Baron subsequently contended that the assets should be returned to a newly-appointed manager of the LLCs, who had allegedly terminated Katz's employment.

In light of this dispute, the receiver requested that the court conduct hearings to determine the competing claims to the LLCs' assets.  Baron and the LLCs objected to the receivers' request, arguing that such proceedings would further delay the winding down of the receivership and unnecessarily expand the court's jurisdiction. The court ultimately concluded that such proceedings would unnecessarily and indefinitely delay the winding down of the receivership in violation of the Fifth Circuit's mandate.  During the first several years that *Netsphere* was pending, Judge Furgeson's and the bankruptcy court's repeated efforts to determine who had authority to control and manage the LLCs proved unsuccessful and were repeatedly met with resistence by Baron, the Village Trust, the LLCs, and their counsel.  The court had no reason to believe that its efforts in this regard would prove any more fruitful.[1]

---

[1] After the court declined to conduct the proceedings requested by the receiver in *Netsphere*, an action was filed in Texas state court by the LLCs on April 22, 2014, to resolve the dispute.  The state court action has not yet concluded.

**Memorandum Opinion and Order – Page 3**

Moreover, the court concluded that it was not necessary, for purposes of complying with the Fifth Circuit's mandate, to resolve the recent dispute between Baron and the LLCs that arose as a result of Baron's or the Village Trust trustee's last-minute efforts to effect a change in the LLCs to manipulate the winding down of the receivership.  In addition, because Baron had previously requested the Fifth Circuit to clarify that he was not the principal beneficiary of the LLCs, it did not appear that he had standing to oppose the manner in which the court directed the Receiver to return the LLCs' receivership assets.  The court, therefore, ordered the receiver to return the LLCs' assets to Katz, who had been acting for some time as the LLCs' designated representative in the *Netsphere* litigation without objection by Baron or the Village Trust.  *See Netsphere* Order 6, n.3 (Doc. 1447). The court also ordered the LLCs' domain registrar, Domain Holdings, to make all payments owed to the LLCs directly to Katz while the contract between it and the LLCs remained in force, unless otherwise agreed to by the parties to the contract or ordered by a court of competent jurisdiction. *Netsphere* Order 5 (Doc. 1395).

On March 27, 2015, the court awarded the receiver $424,857.76 in professional fees and expenses to be paid from the remaining cash assets in the receivership, and ordered that the receivership estate shall terminate upon payment of the receivership fees and expenses approved by the court.  The court also released and discharged the receiver and his professionals from any further duties and obligations.  The court retained exclusive jurisdiction of the case over any disputes that might arise concerning this or any earlier order, the wind down of the receivership estate, the relief provided under the March 27 order, or any controversy that arises from or relates to the receivership or actions of the receiver or his professionals.  *See id.* at 21-22.

On January 22, 2015, the case filed by Plaintiffs in state court was removed to federal court by Vogel and Gardere, pursuant to 28 U.S.C. § 1442(a), the federal officer removal statute.

Alternatively, Defendants assert in their Notice of Removal that removal is proper under 28 U.S.C. § 1452 because this lawsuit is related to the pending *Ondova* bankruptcy case filed by Baron in the early stages of the *Netsphere* litigation on behalf of his company Ondova Limited.  On February 9, 2015, Plaintiffs moved to remand the case to state court, contending that Defendants' removal of the case to federal court was improper.  For the reasons that follow, the court concludes that removal under section 1442(a) was proper, and the court need not address Defendants' alternate ground for removal.

## II.     Removal Under 28 U.S.C. § 1442(a)

Plaintiffs contend that the case should be remanded to state court because the Fifth Circuit in *Netsphere I* determined that the district court lacked jurisdiction to establish the receivership. Plaintiffs, therefore, contend that the receivership order entered by the court is void, and, as a result, Vogel never achieved the status of a judicial officer.  Plaintiffs further assert that the court has no jurisdiction to hear this lawsuit because the Fifth Circuit's mandate in *Netsphere I* directed the district court to wind down the receivership and discharge the receiver but did not direct the court to entertain damage lawsuits against the receiver and his professionals.

"The federal officer removal statute, 28 U.S.C. § 1442, creates an exception to the well-pleaded complaint rule."  *Bell v. Thornburg*, 743 F.3d 84, 87 (5th Cir. 2014). Section 1442 provides in relevant part as follows regarding suits against federal officers or agencies:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> > (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of

Congress for the apprehension or punishment of criminals or the collection of the revenue.

. . .

(3) Any officer of the courts of the United States, for or relating to any act under color of office or in the performance of his duties;

28 U.S.C. § 1442.  Thus, the party seeking to invoke the federal officer removal statute "must both act under an officer of the United States and have averred a colorable federal defense."  *Bell*, 743 F.3d at 88.  One of the most important purposes of the statute is to give federal officials a federal forum to assert and litigate the merits of their official immunity defenses.  *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150-51 (2007).

The same protection is afforded to private persons when a private person lawfully assists a federal officer in carrying out his official duties or is authorized to act with or for a federal officer or agent in executing his duties under federal law.  *Id*.; *Bell*, 743 F.3d at 88.  "The words 'acting under' are broad," and the Supreme Court has made clear that section 1442 must be "liberally construed." *Watson*, 551 U.S. at 147.  The federal officer removal statute requires "the averment of a federal defense" but does not require the removing officer to to "win his case [by proving his federal defense] before he can have it removed.'" *Bell*, 743 F.3d at 89 (citations omitted).  The federal officer need only allege "a causal connection between what the officer has done under asserted official authority and the state [action]." *Id*. (quoting *Mesa v. California*, 489 U.S. 121, 131 (1989)).

The court concludes that Defendants have met the "acting under" requirement.  The Fifth Circuit has held that a receiver appointed by a federal district court is considered an officer of the court. *See Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995) ("Court appointed receivers act as arms of the court.").  Vogel was appointed in the *Netsphere* litigation by Judge Furgeson to act as

a receiver over Baron, the LLCs, and their assets. In his order appointing Vogel, Judge Furgeson expressly granted Vogel the power to "choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as [he] deem[ed] advisable or necessary in the performance of [his] duties and responsibilities under the authority granted" by the receivership order.[2] *Netsphere* Order 8 (Doc. 124).  On December 2, 2010, Vogel notified the court that, pursuant to the court's receivership order, he had engaged Gardere to assist him in carrying out his duties as court-appointed receiver.  Because Gardere is alleged to have assisted the receiver in carrying out his court-appointed duties and was authorized to do so under the receivership order entered by Judge Furgeson, it also meets the "acting under" requirement of section 1442.  *See Watson*, 551 U.S. at 150-51.

Moreover, Defendants' Notice of Removal sets forth in detail the causal connection between the claims asserted by Plaintiffs, including those pertaining to the validity of the receivership order entered by Judge Furgeson and Defendants' execution of their duties under the receivership order. Accordingly, Defendants have set forth a colorable federal defense to Plaintiffs' lawsuit as required by the statute in alleging that their actions relative to Plaintiffs were performed and undertaken under the color of Vogel's appointment as a court-appointed receiver.

Further, the authority cited by Plaintiffs, including *Stump v. Sparkman*, 435 U.S. 349 (1978), does not support their contention that Defendants' removal under section 1442 was improper because they are not entitled to assert immunity as a defense as a result of the Fifth Circuit's reversal of the receivership order.  "Court appointed receivers act as arms of the court and are entitled to share the appointing judge's absolute immunity provided that the challenged actions are taken in good faith

---

[2] In addition to the initial receivership order, Judge Furgeson entered several orders clarifying the powers of the receiver, and the parties and property that were subject to the receivership. Unless otherwise stated, the court refers collectively to these orders in the singular.

and within the scope of the authority granted to the receiver." *Davis*, 70 F.3d at 373.  Because a receiver's immunity is derivative of the appointing judge's judicial immunity, it must depend, in part, upon whether the [appointing] court was acting within its judicial discretion." *Id.*

As explained by the court in *Davis*, however, a judge's absolute immunity is not affected when the judge performs a "normal judicial function" unless he acts in the "clear absence of all jurisdiction." *Id.*  "For purposes of immunity, the judge's jurisdiction is construed broadly and a judge is not deprived of immunity 'because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* (quoting *Stump*, 435 U.S. at 357).  The distinction between lack of jurisdiction and excess of jurisdiction is important in this context; however, Plaintiffs appear to conflate these two concepts.  In *Stump*, the court provided the following example to illustrate the distinction between the two:

> In *Bradley*, the Court illustrated the distinction between lack of jurisdiction and excess of jurisdiction with the following examples: if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune. *Id.*, at 352.

*Stump*, 435 U.S. at 357, n.7 (citing *Bradley v. Fisher*, 80 U.S. 335, 352 (1872)).

In *Netsphere*, the district court had subject matter jurisdiction over the action based on diversity jurisdiction, *see Netsphere*, Pls.' Compl. ¶ 6 (Doc. 1), and the court determines that appointment of a receiver is a normal judicial function because, as the Fifth Circuit in *Netsphere I* recognized, a district court has authority to establish receiverships in certain circumstances.  *See Netsphere, Inc.*, 703 F.3d at 305-307.   A district court also has a number of tools at its disposal to manage its dockets and control the vexatious conduct of litigants such as Baron.  *See id.* at 310-11.

As explained in *Netsphere I*, however, Judge Furgeson simply fashioned the wrong remedy when he established a receivership over assets not at issue in the underlying litigation as a means of controlling Baron's disruptive conduct.  The court in *Netsphere I* also held, based on the record before it, that "in creating the receivership there was no malice nor wrongful purpose, and only an effort to conserve property in which [the court] believed it was interested in maintaining for unpaid attorney fees and to control Baron's vexatious litigation tactics." *Netsphere, Inc.*, 703 F.3d at 313.

The court, therefore, concludes that, even if Judge Furgeson acted beyond the district court's authority or in excess of its jurisdiction, he did not act in the clear absence of jurisdiction when he created the receivership in *Netsphere*. *See id*. at 311 ("Establishing a receivership to secure a pool of assets to pay Baron's former attorneys, who were unsecured contract creditors, was beyond the court's authority."); *see also Stump*, 435 U.S. at 356-60 (internal citation omitted).[3]  The reasoning

---

[3]  The Supreme Court in *Stump* reasoned as follows in concluding that the appellate court erred in holding that Judge Stump was not entitled to judicial immunity because of the erroneous manner in which the court exercised its jurisdiction over a petition:

> The Court of Appeals correctly recognized that the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him. . . . We cannot agree that there was a "clear absence of all jurisdiction" in the DeKalb County Circuit Court to consider the petition presented by Mrs. McFarlin. As an Indiana Circuit Court Judge, Judge Stump had "original exclusive jurisdiction in all cases at law and in equity whatsoever . . . ," jurisdiction over the settlement of estates and over guardianships, appellate jurisdiction as conferred by law, and jurisdiction over "all other causes, matters and proceedings where exclusive jurisdiction thereof is not conferred by law upon some other court, board or officer." This is indeed a broad jurisdictional grant; yet the Court of Appeals [incorrectly] concluded that Judge Stump did not have jurisdiction over the petition authorizing Linda Sparkman's sterilization."

> . . .

> This misconceives the doctrine of judicial immunity. A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors. The Court made this point clear in *Bradley*, where it stated: "[T]his erroneous manner in which [the court's] jurisdiction was exercised, however it may have affected the validity of the act, did not make the act any less a judicial act; nor did it render the defendant liable to answer in damages for it at the suit of the plaintiff, as though the court had proceeded without having any jurisdiction whatever . . . ."

in *Stump* cited by Plaintiffs applies with equal force to the use of a receivership in *Netsphere* to control Baron's vexatious conduct because, while it was determined that Judge Furgeson chose the wrong means to accomplish this goal, the court concludes that he had jurisdiction over the *Netsphere* action and litigants.  Thus, the Fifth Circuit's reversal of the receivership order did not affect Judge Furgeson's judicial immunity or Defendants' derivative judicial immunity, and Plaintiffs' contention to the contrary is fundamentally flawed.  If the court were to accept Plaintiffs' tortured reasoning and theory of judicial immunity, an absurd result would ensue, namely, that court-appointed receivers would lose their judicially-derived immunity and incur liability merely because the appointing judge exceeded his jurisdiction, as opposed to acting in clear absence of his jurisdiction or authority.

As previously noted, Plaintiffs also obliquely contend in a passing statement that the court lacks jurisdiction to entertain their claims based on the Fifth Circuit's reversal of the receivership order and related mandate in *Netsphere*.  Plaintiffs, however, fail to explain why the reversal of the receivership order and related mandate, which did not involve Plaintiffs' subsequently asserted claims against the receiver, affects the court's subject matter jurisdiction to entertain this action. While the two cases are related, this litigation is separate and apart from *Netsphere*, and the issue of whether the receivership was reversed in *Netsphere* does not factor into whether the court has subject matter jurisdiction over Plaintiffs' claims against the receiver in this case.  Accordingly, Plaintiffs' conclusory argument that the court is precluded from exercising jurisdiction over this

---

We conclude that the Court of Appeals, employing an unduly restrictive view of the scope of Judge Stump's jurisdiction, erred in holding that he was not entitled to judicial immunity. Because the court over which Judge Stump presides is one of general jurisdiction, neither the procedural errors he may have committed nor the lack of a specific statute authorizing his approval of the petition in question rendered him liable in damages for the consequences of his actions.

*Stump*, 435 U.S. at 356-60.

**Memorandum Opinion and Order – Page 10**

action as a result of what occurred in *Netsphere* is without merit and warrants no further discussion by the court.

For all of these reasons, the court concludes that Defendants' removal of this action under section 1442 was proper, and Plaintiffs are not entitled to a remand of this action to state court.

## III.   Conclusion

For the reasons herein stated, the court **concludes** that removal under 28 U.S.C. § 1442(a) was proper and **denies** Plaintiffs' Expedited Motion to Remand (Doc. 13).

**It is so ordered** this 25th day of September, 2015.

Sam A. Lindsay
United States District Judge