IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JEFFREY BARON; QUANTEC, LLC; AND NOVOPOINT, LLC,** | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. **3:15-CV-232-L** |
| **PETER VOGEL AND GARDERE WYNNE SEWELL LLP,** | § § § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the court is Peter S. Vogel and Gardere Wynne Sewell LLP's Motion to Dismiss Amended Complaint ("Motion" or "Motion to Dismiss") (Doc. 39), filed April 17, 2015. After careful consideration of the Motion, briefs, pleadings, and applicable law, the court **grants** Peter S. Vogel and Gardere Wynne Sewell LLP's Motion to Dismiss Amended Complaint ("Motion" or "Motion to Dismiss") (Doc. 39) and **dismisses with prejudice** this action.

**I.     Factual and Procedural Background**

Plaintiffs Jeffrey Baron ("Baron"); Quantec, LLC; and Novopoint, LLC ("LLCs") (collectively, "Plaintiffs") originally brought this action on November 24, 2014, in the 134th Judicial District Court, Dallas County, Texas, against Defendants Peter Vogel ("Vogel"); Gardere Wynne Sewell, LLP ("Gardere"); Daniel Sherman ("Sherman"); and Munsch, Hardt, Kopf, & Harr, P.C. ("Munsch Hardt").  In their Amended Complaint, Plaintiffs allege claims based on theories of wrongful appointment of receivership, breach of fiduciary duty, civil conspiracy, intentional infliction of emotional distress, gross negligence and intentional torts, abuse of process, breach of

contract,[1] constitutional torts, and vicarious liability. Sherman and Munsch Hardt are no longer parties to the action. All of Plaintiffs' claims arise out of Vogel's duties as a court-appointed receiver over Plaintiffs and their assets and Gardere's conduct in acting as counsel to the receiver in the *Netsphere* litigation, Civil Action No. 3:09-CV-988-L, which was assigned to this court on June 3, 2013. The court refers herein collectively to Vogel and Gardere as "Defendants."

The receivership was established in November 2010[2], by then-Senior United States District Judge Royal Furgeson ("Judge Furgeson"), in an attempt to curb "Baron's longstanding vexatious litigation tactics" that had disrupted the underlying proceedings in the *Netsphere* litigation. November 24, 2010 Order Appointing Receiver (Doc. 130); *Netsphere, Inc. v. Baron*, 703 F.3d 296, 311 (5th Cir. 2012) (*Netsphere I*). In a later order, Judge Furgeson clarified that the receivership order extended to and included the LLCs. December 17, 2010 Order (Doc. 176). Based on the recommendation of the bankruptcy court in the related *Ondova* bankruptcy proceedings filed by Baron, Judge Furgeson initially appointed Vogel as special master to mediate claims for unpaid legal fees because Baron's hiring and firing of lawyers was exposing the *Ondova* bankruptcy estate to great expense. *Id.* at 303-04. After Vogel was appointed as special master, Baron again fired his attorney. *Id.* at 304. "At this point, the bankruptcy trustee filed an Emergency Motion for Appointment of a Receiver over Baron on November 24, 2010," which was granted by Judge

---

[1] Plaintiffs allege that their breach of contract claim pertains to a global settlement reached in 2010, the terms of which were set forth in a Mutual Settlement and Release Agreement ("GSA") that was intended to resolve the claims in the *Netsphere* litigation and the *Ondova* bankruptcy filed by Baron. Plaintiffs allege that Vogel mediated the settlement, but they do not allege that Vogel or Gardere were parties to the GSA. The instead allege that the GSA was between Baron and persons or entities that are no longer parties to this lawsuit. Accordingly, the court assumes for purposes of this opinion and the remaining Defendants that Plaintiffs' contract claim is moot.

[2] In its prior opinion on Plaintiffs' Motion to Remand, the court mistakenly stated that the receivership was established in 2009.

**Memorandum Opinion and Order - Page 2**

Furgeson on the same day. *Id.* The Order Appointing Receiver appointed Vogel as the receiver over Baron and entities believed to be controlled by him, including the LLCs.

Numerous appeals related to the receivership were filed. In a December 18, 2012 opinion, the Fifth Circuit reasoned that, if the district court had entered a sufficiently specific order, it would have been more appropriate for the district court to "have held Baron in contempt, imposed a fine or imprisoned him for 'disobedience . . . to its lawful . . . command'" pursuant to 18 U.S.C. § 401. *Id.* As no such order was ever entered, the question in *Netsphere I* was whether the receivership was the appropriate mechanism for addressing "Baron's longstanding vexatious litigation tactics." *Id.* The Fifth Circuit determined that a district court has "undeniable authority to control its docket but not through creating a receivership over assets, including personal assets, that were not the subject of the litigation." *Id.* The *Netsphere I* court, therefore, reversed the receivership order, and remanded the case to the district court with instructions to expeditiously wind down the receivership, discharge the receiver, his attorneys and employees, and pay any remaining receivership fees in accordance with the court's opinion. *Id.* at 313-14. The court in *Netsphere I* reasoned that, while the receivership was improper, allowing reasonable receivership expenses to be paid from the receivership funds was equitable because Baron's own conduct increased to a large extent the work and fees incurred by the receiver and his attorneys. *Id.* at 313.

The winding down of the receivership was initially delayed as a result of an involuntary bankruptcy proceeding brought against Baron by his lawyers on December 18, 2012. After the involuntary bankruptcy was dismissed by agreement and this court announced in early 2014 that it would begin winding down the receivership in accordance with the Fifth Circuit's mandate in *Netsphere I*, a dispute and power struggle arose between Baron and the LLCs and persons acting on

their behalf as to whom had authority to receive the LLCs' assets and manage the companies after the receivership was terminated. The LLCs contended that their assets should be turned over to Lisa Katz ("Katz"), the LLCs' manager who was hired in 2011 by the former trustee of the Village Trust. Baron and those acting on his behalf contended that the LLCs' assets should be turned over to a yet-to-be determined designee of the Village Trust trustee. Baron subsequently contended that the assets should be returned to a newly-appointed manager of the LLCs, who had allegedly terminated Katz's employment.

In light of this dispute, the receiver requested that the court conduct hearings to determine the competing claims to the LLCs' assets. Baron and the LLCs objected to the receiver'S request, arguing that such proceedings would further delay the winding down of the receivership and unnecessarily expand the court's jurisdiction. The court ultimately concluded that such proceedings would unnecessarily and indefinitely delay the winding down of the receivership in violation of the Fifth Circuit's mandate. During the first several years that *Netsphere* was pending, Judge Furgeson's and the bankruptcy court's repeated efforts to determine who had authority to control and manage the LLCs proved unsuccessful and were repeatedly met with resistence by Baron, the Village Trust, the LLCs, and their counsel. The court had no reason to believe that its efforts in this regard would prove any more fruitful.[3]

Moreover, the court concluded that it was not necessary, for purposes of complying with the Fifth Circuit's mandate, to resolve the recent dispute between Baron and the LLCs that arose as a result of Baron's or the Village Trust trustee's last-minute efforts to effect a change in the LLCs to

---

[3] After the court declined to conduct the proceedings requested by the receiver in *Netsphere*, an action was filed in Texas state court by the LLCs on April 22, 2014, to resolve the dispute. It is unclear at this time whether this state court action is ongoing.

**Memorandum Opinion and Order - Page 4**

manipulate the winding down of the receivership. In addition, because Baron had previously requested the Fifth Circuit to clarify that he was not the principal beneficiary of the LLCs, it did not appear that he had standing to oppose the manner in which the court directed the Receiver to return the LLCs' receivership assets. The court, therefore, ordered the receiver to return the LLCs' assets to Katz, who had been acting for some time as the LLCs' designated representative in the *Netsphere* litigation without objection by Baron or the Village Trust. *See Netsphere* Order 6, n.3 (Doc. 1447). The court also ordered the LLCs' domain registrar, Domain Holdings, to make all payments owed to the LLCs directly to Katz while the contract between it and the LLCs remained in force, unless otherwise agreed to by the parties to the contract or ordered by a court of competent jurisdiction. *Netsphere* Order 5 (Doc. 1395).

On March 27, 2015, the court awarded the receiver $424,857.76 in professional fees and expenses to be paid from the remaining cash assets in the receivership, and ordered that the receivership estate shall terminate upon payment of the receivership fees and expenses approved by the court. The court also released and discharged the receiver and his professionals from any further duties and obligations. The court retained exclusive jurisdiction of the case over any disputes that might arise concerning this or any earlier order, the wind down of the receivership estate, the relief provided under the March 27 order, or any controversy that arises from or relates to the receivership or actions of the receiver or his professionals. *See id.* at 21-22.

On January 22, 2015, the case filed by Plaintiffs in state court was removed to federal court by Vogel and Gardere, pursuant to 28 U.S.C. § 1442(a), the federal officer removal statute. Alternatively, Defendants assert in their Notice of Removal that removal is proper under 28 U.S.C. § 1452 because this lawsuit is related to the pending *Ondova* bankruptcy case filed by Baron in the

early stages of the *Netsphere* litigation on behalf of his company Ondova Limited. On February 9, 2015, Plaintiffs moved to remand the case to state court, contending that Defendants' removal of the case to federal court was improper. On September 25, 2015, the court denied Plaintiffs' Motion to Remand.

Defendants filed their Motion to Dismiss Plaintiffs' Amended Complaint on April 17, 2015. Briefing on the Motion was complete on June 15, 2015.[4] In their Motion to Dismiss, Defendants seeks dismissal of all of Plaintiffs' claims on the grounds that they are barred by collateral estoppel, res judicata, and the Barton doctrine. Defendants also contend that, as court-appointed officers, they are immune from suit for the actions alleged by Plaintiffs in connection with the administration of the receivership established by Judge Furgeson in *Netsphere*. In addition, Defendants contend that Plaintiffs' state law and constitutional claims fail for other reasons. Defendants' contention regarding immunity is dispositive of Plaintiffs' claims. Accordingly, the court's opinion focuses on Defendants' contention regarding immunity.

---

[4] On July 12, 2015, Plaintiffs filed a Motion Under Rule 12(d) of the Federal Rules of Civil Procedure, which the court construed as an impermissible 39-page surreply and struck it because it was filed without leave of court and addressed Defendants' contentions regarding collateral estoppel and res judicata that could have been fully raised in response to the Motion to Dismiss, rather than a separate motion filed one month after briefing on the Motion to Dismiss was complete. The court also noted that such conduct by Plaintiffs and their counsel was characteristic of prior disruptive conduct and litigation tactics in this and related cases. The court, therefore, required Plaintiffs and their counsel to show cause why sanctions should not be imposed against them. In response to the court's show cause order, Plaintiffs explained that they filed their Rule 12(d) motion "out of an abundance of caution" because Defendants' Motion to Dismiss was based in part on their affirmative defenses of collateral estoppel and res judicata, and that such issues are not normally addressed under Rule 12(b)(6) unless treated as one for summary judgment and the parties are given an opportunity to present all material pertinent to the motion. Pls. Resp. to Show Cause Order 2. Plaintiffs raised this same issue or concern in their response to the Motion to Dismiss, albeit in an abbreviated fashion, and fail to explain why it could not have been fully fleshed out in response to the Motion to Dismiss. It was not until one month after Defendants filed their reply in support of the Motion to Dismiss and cited authority for the proposition that courts can and have decided such matters under Rule 12(b)(6) based on the pleadings or information subject to judicial notice that Plaintiffs filed their Rule 12(d) motion. The court is quite familiar with the tortuous history of this case and the related litigation and takes judicial notice, as necessary, of the pertinent records in the related actions in ruling on the Motion to Dismiss. The court will not sanction Plaintiffs or their counsel this time but does not condone the manner in which they handled and attempted to manipulate and unnecessarily complicate the resolution of the issues raised in the Motion to Dismiss.

## II.      Standard for Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197

F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corporation*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion,

its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

**II.     Analysis**

Defendants contend that, as court-appointed officers, they are entitled to immunity for their actions in connection with administering the receivership established by Judge Furgeson in *Netsphere*. Plaintiffs respond that Defendants do not have immunity because Judge Furgeson lacked jurisdiction to appoint the receiver, the appointment of the receiver is void, and Vogel, as a result, never achieved the status of a judicial officer. Alternatively, Plaintiffs contend that, even if Defendants are entitled to quasi-immunity, the Motion to Dismiss fails because: (1) the de facto officer doctrine is inapplicable; and (2) Defendants are not immune for torts committed before Vogel's appointment as receiver, their fraud on the court, or their intentional torts, acts of gross negligence, and breaches of fiduciary duty.

The court's prior memorandum opinion and order (Doc. 48) denying Plaintiffs' Motion to Remand disposes of Plaintiffs' contentions regarding Judge Furgeson's alleged lack of jurisdiction to appoint the receiver and their related arguments regarding the inapplicability of the de facto officer doctrine. In this regard, the court concluded that, even if Judge Furgeson acted beyond the district court's authority or in excess of its jurisdiction, he did not act in the clear absence of jurisdiction when he created the receivership in *Netsphere*. The court also rejected Plaintiffs' contention that the

Fifth Circuit's reversal of the receivership order affected Judge Furgeson's judicial immunity or Defendants' derivative judicial immunity in connection with the receivership. For purposes of brevity, the court will not rehash all of the reasons why Plaintiffs' contentions in this regard are flawed and instead refers the parties to the court's prior opinion. Plaintiffs' alternative arguments as to whether Defendants are entitled to immunity with respect to the claims asserted by them also fail.

"Court appointed receivers act as arms of the court and are entitled to share the appointing judge's absolute immunity provided that the challenged actions are taken in good faith and are within the scope of the authority granted to the receiver." *Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995) (citations omitted). When nothing in the complaint indicates that the receiver has acted outside the scope of authority granted to him by the court, the receiver is immune from liability and dismissal of the claims against the receiver is appropriate under Rule 12(b)(6). *See Davis*, 70 F.3d at 373; *Property Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 603-04 (11th Cir. 1985).

As previously noted, Vogel was appointed by Judge Furgeson in the *Netsphere* litigation on November 24, 2010, to act as receiver over Baron and the LLCs. *Netsphere* Order (Doc. 130). Pursuant to the Order Appointing Receiver, [5] Vogel was given exclusive control over Baron, the LLCs, and other receivership parties, and the receivership assets, which was defined broadly to include all interests and rights of the receivership parties in real and personal property, including assets held by or for the receivership parties. The authority granted to Vogel under the receivership order is quite broad.

---

[5] In addition to the initial receivership order, Judge Furgeson entered several orders clarifying the powers of the receiver, and the parties and property that were subject to the receivership. Unless otherwise stated, the court refers collectively to these orders in the singular.

**Memorandum Opinion and Order - Page 10**

In addition to powers granted in equity to receivers, Vogel was given the power to access and assume full control over the receivership parties by removing, as deemed necessary or advisable, any director, officer, contractor, employee, or agent from management or participation in the affairs of the receivership parties. Vogel was granted authority to assume control over all documents, property, and assets of the receivership parties and to take all acts necessary or advisable to preserve the value of the assets to prevent irreparable loss, damage, or injury to consumers or creditors of the receivership parties, including preventing the transfer, withdrawal, distribution, or misapplication of assets. Vogel was given authority to manage and administer the businesses of the receivership parties by taking corporate actions, including but not limited to filing for bankruptcy, dissolving the receivership party, selling the receivership party, and taking any action that the receiver deemed advisable or necessary. The receiver had authority to make payments and disbursements from the receivership estate that were necessary or advisable for carrying out the court's directions and exercising the authority granted him. In addition, Vogel was given the express power to "choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as [he] deem[ed] advisable or necessary in the performance of [his] duties and responsibilities under the authority granted" by the receivership order. *Netsphere* Order 8 (Doc. 130). On December 2, 2010, Vogel notified the court that, pursuant to the court's receivership order, he had engaged Gardere to assist him in carrying out his duties as court-appointed receiver. Consequently, Vogel and Gardere are entitled to immunity in connection with their administration of the receivership as long as they were acting pursuant the receivership order(s) entered by Judge Furgeson.

Virtually all of Plaintiffs' allegations and claims with respect to the remaining Defendants pertain to the receivership and Defendants' administration of the receivership. *See* Pl.'s Am. Compl. ¶¶ 80-81 (wrongful appointment of receiver), 87, 90 (breach of fiduciary duty), 94 (conspiracy), 103 (gross negligence and unspecified intentional torts), 109 (abuse of process), and 116 (conspiracy). While Plaintiffs allege with respect to each claim that Defendants' acts were "ultra vires in nature," such allegations are conclusory and not supported by any facts that Defendants were acting outside the scope of Judge Furgeson's receivership orders and the broad authority granted to the receiver. Plaintiffs allege and the court is well aware that they vigorously opposed Judge Furgeson's establishment of the receivership and the various orders authorizing payment for fees that were incurred in the administration of the receivership. Neither this nor Plaintiffs' contention that the fees were "grossly inflated" take Defendants' alleged conduct outside the scope of the receivership orders or the Fifth Circuit's opinion and mandate in *Netsphere I* authorizing payment of receivership expenses. *See id.* ¶¶ 81, 90, 94, 103, 109, 116.

Plaintiffs' contention that Defendants allegedly committed torts before the receivership was established or fraud on the court in the *Netsphere* litigation or related actions does not save their claims. According to Plaintiffs, Vogel and Gardere made representations or recommendations to Judge Furgeson and the Fifth Circuit to induce Judge Furgeson into establishing the receivership and persuade him and the Fifth Circuit to continue the receivership. Plaintiffs also contend that, after entry of the receivership order, Defendants made certain misrepresentations to the court regarding Baron's conduct in an effort to preserve and maintain their control over the receivership assets. This is the basis of Plaintiffs' claims for wrongful appointment of receivership and gross negligence and

**Memorandum Opinion and Order - Page 12**

intentional torts and also appears to be the basis, at least in part, of Plaintiffs' conspiracy and breach of fiduciary duty claims.

Any contention by Plaintiffs, however, that Defendants engaged in wrongful or sanctionable conduct in the *Netsphere* or any of the related litigations brought by or against Baron and the LLCs could have and should have been brought to the court's attention in a Rule 11 motion or one of the many appeals filed with the Fifth Circuit regarding the receivership and fee orders, not as a separate collateral state court action. *See* Fed. R. Civ. P. 11; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42-46, 50-51 (1991) (upholding the district court's use of its inherent authority to sanction bad-faith conduct which included "misleading and lying to the court."); *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995) (noting court's inherent authority to sanction bad faith conduct). Additionally, Defendants are correct that any claim by Plaintiffs based on the wrongful establishment or continuation of the receivership or payment of receivership expenses is an impermissible collateral attack of prior orders through this suit. Moreover, under Texas law, attorneys are immune from suit by a third party or an opposing party for their litigation conduct. *See Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

**IV.    Amendment of Pleadings**

Plaintiffs amended their pleadings after Defendants moved the first time to dismiss their claims. In light of Plaintiffs' steadfast position on the sufficiency of their allegations, and because they have not requested to further amend, the court believes that Plaintiffs have stated their "best case" and that they cannot improve upon or supplement the allegations as pleaded. The court, therefore, concludes that Plaintiffs cannot set forth additional allegations that exist to state a claim upon which relief can be granted and that further attempts to amend would be futile. Additionally,

the court determines that such further attempts would unnecessarily delay the resolution of this action. Accordingly, the court will not allow Plaintiffs to further amend their pleadings.

**V.   Conclusion**

For all of the reasons set forth herein, the court **grants** Peter S. Vogel and Gardere Wynne Sewell LLP's Motion to Dismiss Amended Complaint (Doc. 39) and **dismisses with prejudice** their claims based on theories of wrongful appointment of receivership, breach of fiduciary duty, civil conspiracy, intentional infliction of emotional distress, gross negligence and intentional torts, abuse of process, breach of contract, constitutional torts, and vicarious liability.[6] In accordance with Rule 58 of the Federal Rules of Civil Procedure, a judgment will issue by separate document.

**It is so ordered** this 31st day of March, 2016.

_Sam A. Lindsay_
Sam A. Lindsay
United States District Judge

---

[6] Alternatively, the court concludes that Plaintiffs' claims are barred by the *Barton* doctrine for the reasons set forth in Defendants' Motion and reply brief.